Good morning, Your Honors. Please the Court, Dennis Reardon and Donald Horgan for Petitioner and Appellant Knoller. Last Friday, the New York Times ran an article that discussed the scathing criticism directed at the Venezuelan government by the UN High Commissioner for Human Rights, as well as our own government, over the 13-year sentence handed down to Venezuelan opposition leader, Leopold Lopez, after a trial in which Lopez's lawyers were not permitted to present evidence or witnesses on their client's behalf. It should be the case that such a shackling of defense counsel could never occur in our state or federal courts because the right to the assistance of counsel at every critical stage of a trial is enshrined in the Sixth Amendment to the Constitution. Yet in this case, Ms. Knoller's trial counsel was threatened with removal from the courtroom, and then remarkably, with incarceration in a holding cell, during what, from her client's point of view, was the most critical stage of all the stages of a trial, the prosecution's rebuttal argument to the jury.  Ginsburg-Miller, counsel, we're here on habeas, correct? Miller Indeed, Your Honor. Ginsburg-Miller And so in order for you to get relief, the State court decision would have had to be contrary to or an unreasonable application of clearly established Supreme Court law. Do you agree? Miller The — yes, Your Honor. Ginsburg-Miller Okay. So what is the clearly established Supreme Court case that you're saying was inappropriately interpreted by the State court in this case? Miller Well, the clearly established Supreme Court law is that you were entitled to the assistance of counsel at every critical stage of a trial. Ginsburg-Miller I'm not talking chronic. Miller I'm talking Getters, which preceded chronic. I'm talking Mickens v. Taylor. That statement has been made again and again. Now, what is true, Your Honor, what is true is that — and this is one of the dangers of the government's position — is that there has never been a case in which a judge said, if you get up to object at all during this case, I'm going to have a marshal or bailiff beat you with a rubber truncheon. The fact that something so extreme has never reached the Supreme Court does not mean that the general principle that that denies the defendant the assistance of counsel during cross-examination can't be reached by a Federal court. In this case — Kagan Could you narrow it? I mean, there's a lot of argument, of course, over the footnote and chronic and others. What we have here is a portion of the rebuttal argument after which defense counsel may have reasonably assumed she ought not get up based on the direction of the court. So when you have a portion of the final rebuttal and then there's the State court saying, well, that doesn't mean that there was complete denial and everyone can argue over footnote 25, how do you fit that in to clearly established Federal law? That's really our first hurdle. Well, I think the question — clearly established Federal law has a couple of — you could break it down. One would be, as the court just described, was this portion of the closing trial is a stage that has significant consequences for the defendant. And, Your Honor, this is the last thing — what occurred during that portion when she was gagged by the court, threatened with jail in a remarkable directive to counsel, was that the prosecution said, look, this is the last thing I'm going to say to you. The last thing is breathe in every breath as she breathed in, a clear violation of the Golden Rule. That was arguably the most significant thing that transpired during the closing argument. But even if I were to agree with you on that question, isn't the largest boulder you've got to push up the hill the harmlessness determination? How do you get past, under the standard of review that we are required to apply, the adverse harmlessness determination? Well, there's two ways to approach that, which is that if we're talking about the Getter's chronic rule of structural error, then obviously a — if the Court were to apply that, a structural error plainly meets the Breck test, and it would render in itself the State court decision on harmlessness unreasonable, because they refused to apply the chronic test. And my question impliedly asked you to assume that it wasn't structural error. All right. So let's go on to Breck, because under Breck, we then bear the burden of proving either a substantial and injurious effect on a jury, or at least that the evidence is in equipoise on that. Could I just stop for a second, because I want to get the structure straight. When this case was first argued to the district court, that was before Ayala had come down. So now we have Ayala that's redirected us yet again in these habeas cases to doing the two-tiered analysis. How does that figure in here? Well, you know, as was pointed out by Justice Sotomayor, I mean, if you have proven that there's a substantial injurious effect on the jury, you really have already proven, because it subsumes the test that a finding that — I know she said that, but the question is that we now are supposed to do the double layer analysis. Fair enough. Fair enough. So let's do it this way. Let's talk about the unreasonability of the state court decision on harmlessness, and then talk about BRAC. Was the state court — does this court have a basis on which to find that the state court judgment that this was harmless was unreasonable? As Judge Tiger pointed out, the state court turned somersaults. It was blatantly intellectually dishonest when it said that, in fact, there was really no error here at all, because, of course, counsel would know that when a judge says, I'll throw you in jail if you open your mouth, he's really saying, go ahead, make any objection you want as long as it's appropriate. That's nonsense. That is result-oriented nonsense. And then the court goes on to — and that very fact is a demonstration that the state court was prepared to be unreasonable in order to try and avoid the consequence of prejudice in this particular case. And so I think — I think the very fact that the state court — when you look at the state court judgment, a lot of their ruling that it was harmless is really dependent on the fact that they took the position that it really wasn't error at all. It was permissible to do this because it really didn't in any way burden the defense. It's not that it didn't burden the defense. It's whether or not the defendant was completely deprived of the assistance of counsel. That's the difficulty I'm having with your argument is, as Frost v. Gleave says, there has to be a complete deprivation, right? Well, Frost v. Gleave dealt with a situation in which someone was allowed to argue — the counsel was fully allowed to argue that they should present an alternate defense. They gave a full argument. They were able to preserve the notion that there was a legal ruling that the defense wasn't appropriate. You know — It's kind of analogous to this case in that the defense was not permitted to argue as fully as the defense thought was appropriate in closing, and — But we're talking — Your Honor, let's — let's — let's look at this. We are talking about a State trial court judge who threatened, without any basis at all, without any basis at all, a defense counsel with jail for making an absolutely appropriate objection, misstates the evidence, which he permitted — an objection that he permitted the prosecution to make. You know, the — the very — I mean, it displays the partisanship that absolutely characterized this prosecution from beginning to end until, in fact, Judge Warren, I think, on the new trial motion, having reviewed all of the evidence, realized that this simply was not — not a murder case. But I — I do submit that the — the State court judgment in — in finding that none of this was really inappropriate at all, then, of course, the harmlessness ruling becomes easy. And — and, you know, if you look at the State court's, you know, dismissal of the golden rule objection compared with the subsequent decision by different judges on the same court in the Vance case about the powerful prejudice of this kind of argument, I think you're talking about an unreasonable determination when this is the final thing that is said in — in closing. And — and let me just also point this out. The — the same court, which simultaneously, in the same opinion, found harmlessness as to this error, rewrote California murder law, rewrote it, invented a new definition of it, eliminating the need for the subjective belief in — in the — in the probability of death in order to be able to overturn Judge Warren's new trial motion. The California Supreme Court found that that rewriting was error by a — a seven-nothing. This was a result-oriented court. I think that we go on to the Brecht test here and say, in a situation — and — and let's — let's — all — all of the members of this court have either presided over or reviewed countless transcripts. To have a judge in front of a jury say to — twice to a lawyer who is performing core functions on behalf of her client, I will throw you out of the courtroom. I will jail you in front of the jury. What about the prejudicial effect of that? What about the prejudicial — at the critical point of the trial, he is saying to the jury what she's doing is absolutely improper. It was not improper at all. He had let — permitted the prosecution to do it. I mean, we are — this — this is an important case, because I will concede — I will concede to the State this. There are ways that this is factually different from any Supreme Court case. I don't think that they in any way defeat the rule that the general principle applies. But the way that it's different is I don't know of any judge who has ever threatened to jail — jail a lawyer in front of a jury during the critical point, a closing argument for — for making misstates the evidence, objections which that lawyer is obligated by State law to make. And the Court is faced with the quandary of whether we're going to say, well, in an That sort of thing is not inconsistent with what we believe to be a fair — a fair trial, because, you know, we don't believe that it was necessarily prejudicial. One of the things that Justice Scalia said in — in Gonzales v. Lopez is he said, you know, we don't even deal with harmlessness often in right-to-counsel cases, because take — take the — the Feretta right. It is going to prejudice the defendant by allowing him to represent himself. But we consider the value of the right-to-counsel and self-counsel such that we don't get into harmlessness. If that right is — is — is retracted or deprived, then there's structural and automatic reversal for that denial. It ought to be the case that when a — that in an American trial, when a judge threatens a lawyer who is doing nothing but their job at this stage of the proceeding with jail and it results in a tremendously prejudicial closing argument at the very apex of the trial, that whether you're dealing with brec or you're dealing with chronic, that satisfies the — the — the standard for — for reversal. I know I've probably exceeded my time, and — No, that's fine. It's an important case and the issues are important, so the — And I stand ready to answer any of the Court's questions. We'll give you some rebuttal time as well. Thank you very much. May it please the Court. Peggy Ruffray from the Attorney General's Office for Respondent. Your Honor, it's our position that the State court reasonably concluded both that any limitation on counsel's right to object during the limited portion of closing argument was not structural error and that that error was harmless. Are you conceding error? I'm sorry? Are you conceding error? The State court found that there was error. Okay. Yes. And so — So you agree with that? We're defending the State court's judgment, and they did find error, but went on to find that it was not structural and that it was harmless. And it's our position that that was reasonable. First of all, the Petitioner argues that this one phrase in Cronic, that's really what they're focusing on, this footnote 25 that says that if you're prevented from assisting the accused, that that clearly established a bright-line rule that any interference with counsel's assistance, however brief or slight, requires per se reversal, and that no reasonable jurist could possibly interpret that footnote in any other manner. However, as the State court held in this case, it conducted a thorough review of all of the Supreme Court cases, as well as cases from other jurisdictions, and the California court said, we find no case that has held that limiting counsel's ability to object during a portion of closing argument is structural error. And I think that's the critical finding for this court here today. There's no Supreme Court cases at all about limiting objections, period, much less limiting objections during a portion of closing argument. So that rule in Cronic, that footnote in Cronic, is much too general to clearly establish the kind of rule that is required under ADPA. In addition, every Supreme Court case that has been cited since Cronic has made it clear that that statement applies to the complete deprivation of counsel. They've said that over and over in all of those cases. As this Court held in Woodford v. Viscotti, this Court said Cronic and its progeny have made clear that this exception is limited to the complete denial of counsel. And I think that limitation is particularly appropriate when you're considering the scope of structural error. The Supreme Court has repeatedly cautioned that that should be rare. In Florida v. Nixon, the Supreme Court specifically said that Cronic should be a narrow exception and that it should be construed narrowly. And I think if you were to adopt the Petitioner's approach, that would, by contrast, require the Court to read Cronic in the broadest possible manner, and it would result in many cases being reversed automatically without a consideration of whether the error was harmless. For example, if the trial court were to erroneously overrule a defense attorney's hearsay objection and evidence came in, a court could view that as preventing the right to assist the accused and consider that to be structural error. So this would constitute the case. Kennedy, sometimes Judge Rawlinson asked you, do you concede, and that was almost five minutes ago, and you still haven't answered her question. It would be nice sometimes if the attorneys general of this country and the prosecuting authorities of this country would actually just stand up in front of an appellate panel and say, you know, judges, this stunk. What happened here really stunk, and yes, it was an error, and yes, we concede the error, but we've got legal arguments to make for why what happened in this case shouldn't happen in a courtroom in the United States of America. I'm sorry. I don't think that's the answer. Just some observations I want to offer. I thought that I had said that. Well, actually, you didn't. I thought you did say, I understood that you said it's you, that it's not structural error, but it was error. Yes. That's how I understood your answer at the outset. Is that correct? Yes, yes. That is what I understood it to be, that the State court found an error, and you're defending the State court decision. That's different than your conceding error, that it was error, from your perspective. To me, you were saying that the State court found an error, but not structural error, and we're defending that decision. So I heard it a little bit differently. Well, that is what I said, and that is what I stand by, and at this point, we would concede that there was error. Okay. So let's get to the error. There is error in the verdict. Yes, and our position is that it was not structural, and the State court reasonably found that, and I think that that's informed. But if it's not structural, and you still have constitutional error, then you still have to walk through what Mr. Reardon spent the bulk of his time on, and that is, was it harmless in this context? And first, the question is whether the State court's harmlessness determination was reasonable under the Ayala case, and then whether it was also harmless under Brecht. The State court found that there were a few statements in that final closing argument that were improper. Most of them were proper. A few were improper, and those were the think-of-the-victim statements. And they found that that was harmless for three reasons. One, those comments were based on the evidence. Two, the jury was instructed not to be swayed by sympathy or passion. And three, the evidence was very strong. And I think that a good analogous case that this Court has decided was Drayden v. White, where the prosecutor actually delivered a soliloquy in the voice of the murder victim, and the Court found that the error was harmless for those exact same three reasons. So, for example, the district attorney didn't go off outside the evidence in making those arguments, and could have made the exact same arguments if he had said the very same thing. The victim saw 240 pounds of dogs running toward her in a stampede. The victim was breathing in and out because the dogs, the evidence showed that the dogs had focused on the jugular vein in most of the wounds. Well, there were 77 wounds throughout her entire body, but they had focused on the victim's throat. So that was completely based on the evidence to say that she was lying there on the floor having difficulty breathing. It wasn't something that he made up. It was based solely on the evidence. And so it could have been – it was a totally proper argument, except for saying it in the context of think of the victim, which I think he said three times in the context of his 77-page closing arguments. You have to view this in context of the entire trial. It took over a month. There were 70 witnesses. This was two paragraphs of his argument. What about the – what concerns me is this muzzling of the defense attorney with a threat, you know, one more word out of you and you'll be talking to me from the other side of the bench. And the state court said that this didn't actually cause her to withhold further objection. How can that be presumed to be correct as a matter of common sense? Well, you have to look at this particular defense attorney. Let me first say that the Court doesn't even need to reach that ruling because that was their alternative holding. The state court said even if we were to presume that it did, in fact, cause her to fail to object for those last few moments, then there was no structural error. And then in a footnote, they talked about whether it did, in fact, cause her to object. So the Court doesn't even have to reach that argument. But if it does address that, then I think there was quite a bit of factual evidence to support it. She had actually violated an order that was sanctionable by contempt already in the trial. So she was not muzzled by the thought of going to jail or being held in contempt. There was a gag order, and she went on national television to say that the victim's But there's something different about an attorney going off on a press dalliance versus being in a trial where you have a very specific professional obligation to defend your client to every possible degree available under the law. So, I mean, I don't know why it's sort of like she sinned once, so it's no big deal she could sin again is sort of the argument. That doesn't, I don't think, get the state out of its box, does it? Well, she sinned many times. But the trial court said he went out of his way to say based on my own personal observations after experiencing Ms. Ruiz throughout this entire month-long trial, he said, I don't believe that this actually caused her to fail to object. So I wasn't there, he was. That was his factual determination about her motivation. That's why it's presumed correct under the standard of review. And it is supported because of all of these other instances. That's the point that we're making. But to get back to the harmlessness argument, the final point that I would like to make is that the evidence in this case was very strong. And the petitioner keeps making the same argument that was rejected by the state courts about what is required for second-degree murder implied malice under California law. It's literally the verbatim argument that he made in the California Supreme Court, which was rejected. And then when it went back to the trial court on remand for resentencing and to reconsider this case, she again specifically rejected that view of what is required. The court of appeals specifically held that a prior death by the dogs is not necessary. You don't get a free death. And they analogized it to the near misses in drunk driving cases, which is sufficient to show conscious disregard for implied malice. So we have the jury, the trial court on remand, the unanimous 2010 court of appeal opinion, and the district court all finding that there was very strong evidence of implied malice in this case, which I think is — it cannot be discounted. I mean, these dogs were huge. They were bred to be aggressive. They had never been trained. More than 30 witnesses testified that they had — the dogs had bitten, lunged at, or attacked other people or dogs in Ms. Knoller's presence. And this was just in the span of a few months. The dogs — Kennedy, if I understand your argument, you're — it seems to me quite appropriately arguing that on a sort of a sliding-scale approach, the stronger the evidence of guilt, including the element of implied malice, the greater tolerable the evidence of tolerance for error there is in the proceedings. So if it's a weak case with error that is constitutional error, then maybe you say it's not harmless, but if it's a really strong case, even a constitutional error should not be deemed to be anything other than harmless. Is that a fair sort of approach? Yes, I think that's exactly right. And I think there's many, many cases that say that. It means that there wasn't a substantial — But you don't mean to suggest that even the strongest case, there couldn't be error of a constitutional magnitude that would require a new trial. Well, it's a case-by-case basis. Case-by-case. Yes. And in this case, what I'm saying is that the evidence of implied malice was extremely strong. And so the fact that the prosecutor said three or four times, think of the victim, based on evidence that was completely in the record, that wasn't what was going to make a difference in this trial, given — You don't argue, do you, that the judge would have overruled any objection that actually came to the rebuttal? You don't make that argument? I think that's a little bit unclear. I mean, the argument, the second objection in particular, the defense attorney simply said, objection, and then she said the dogs were always on leash. So that's not a proper objection, and she was simply arguing her view of the evidence while the prosecutor was giving the closing argument. I don't think that's proper. You don't — you haven't argued that part of the zeitgeist, if you will, of the case is that the judge, having sat through the trial and interacted with counsel over many, many court sessions, part of the harmlessness calculus is that the judge would not have sustained any objection that would have been made. And therefore, even though you can argue about whether she stayed in her seat as a threat, the fact of the matter is it wouldn't have had an impact on his ruling had she objected. I'm not sure I completely follow the Court's question. Fair enough. I think it's unclear whether the Court would have sustained an objection. Do you mean an objection to the prosecutor's argument? To the closing argument, to the prosecutor's argument. That probably would have been sustained. But in any event, I think you would agree that this, you know, the golden rule, the put yourself in the frame of the victim in the last minutes, that that was improper. That segment of the argument was improper. Yes. And the State court found that it was improper. Right. Yes. All right. So if that was the gist of your question, I'm not sure if I followed it. But if that was the gist, then yes, that kind of an objection would have been sustained. Would the State appellate court have viewed it differently had the error been preserved on direct appeal? Well, they went ahead and addressed it anyway, so it doesn't really matter. I mean, they did go ahead and consider the merits, as if it had been preserved. Yes. Yes. And found no prosecutorial misconduct rising to a level requiring a new trial. Correct. In the context of the harmlessness of this right to counsel claim. Okay. That's what the State court found. And as I said, the reason they found that was for these three reasons, which are the exact same kind of reasons that this Court has found were sufficient to overcome that kind of error. They were based on the evidence that the jury was instructed not to be swayed by passion or prejudice, and that the evidence was very strong. I mean, there were many, many witnesses that came in and testified over and over again about how aggressive these dogs were. They had actually bitten several people before. They had actually bitten the victim before. They had bitten Ms. Knoller's husband's finger almost off. Did the dog actually eat the doghouse? The evidence was that the dog had eaten the doghouse that he had killed, or one of the two, I don't remember if it was the male or the female. They had killed sheep. They had killed a cat. A veterinarian had gone out of his way to write the first letter he'd ever written in 49 years saying, I have to tell you, these dogs will be a liability to you. And they brought the dogs to their San Francisco apartment building, and they proceeded to wreak havoc on the residents of that area for the next few months. And what I was about to say was that they brought the dogs, I think it was in April and August, and the death happened in January. So all of this massive amount of evidence of attack after attack happened in just a few months. And we've given you quite a bit of extra time. And of course, I wanted to give Mr. Reardon, he took extra time as well. So if you could wrap it up, unless there's further questions. Thank you. Thank you, Your Honor. Could you please put two minutes on the clock for rebuttal? The State has misstated something. The State court, and this is a sign of how unreasonable it was, did not find any error as far as the judge's conduct was concerned. It said the closing argument was improper. And the reason it found no error is just proof of how result-oriented it was. It said it was okay for the judge to threaten jail because the his earlier threat of removing from the courtroom had not been heeded. Well, the earlier threat was an absolute abuse of power. All Ms. Ruiz did then was say, object to and misstates the evidence. And he threatened to take her out of the courtroom. The notion that you can justify threatening her with jail because of an absolutely abusive threat to remove her from the courtroom for a standard objection. And the prosecution certainly made speaking objections. It's just a demonstration of how weak the case, how irrational they were. Let's get to the evidence in one minute. Let's be clear. The evidence of criminal negligence in this case was overwhelming. Mr. Noel, who was the most culpable, and Ms. Knoller deserve their convictions for involuntary manslaughter. Any reasonable person would not have engaged in this conduct. But, as the Supreme Court said in the Knoller case, in order to be guilty of murder, Marjorie Knoller had to walk that dog thinking subjectively in her head. Not what a reasonable person. She had to think, I could kill somebody on this walk and I don't care. That's what implied malice is. Judge Warren, and the state has vouched for him, said, I saw her testimony, and when she said, I never thought that this could have happened, he, the trial judge, the only one who observed her testimony, I believed her. That means she was not guilty of the ---- There were 12 others who observed her testimony. Indeed. But the point that I'm saying is not that this Court doesn't adjudicate guilt or innocence. But the claim that this was a strong case or an airtight case for implied malice murder as opposed to involuntary manslaughter is simply without basis. Thank you very much, Your Honors. Thank you. Thank both counsel for your arguments this morning. The case of Knoller v. Miller is submitted.
judges: McKeown, Rawlinson, Davis